**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed January 5, 2017.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00889-CV

---

## BANDALI DAHDAH, Appellant

## V.

## NADIM ZABANEH AND BASIMA ZABANEH, Appellees

---

**On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2015-27555**

---

## M E M O R A N D U M   O P I N I O N

Bandali Dahdah appeals an order granting summary judgment in favor of Nadim and Basima Zabaneh. Bandali contends that the trial court erred by (1) awarding the Zabanehs $35,000 in attorney's fees; (2) failing to address his special appearance; (3) denying his motion for continuance; and (4) granting summary judgment in favor of the Zabanehs on their assault claim. We affirm in part and reverse and remand in part.

## BACKGROUND

Nadim and Basima are a married couple; they reside in Harris County, Texas with their daughter. Bandali is Basima's brother; he resides in Massachusetts.

The Zabanehs filed their original petition and request for injunctive relief on May 12, 2015. They alleged that, after Basima's and Bandali's parents died, Bandali "became enraged about the distribution of their parents' estate and directed his anger toward Basima and Nadim, amongst other persons." The Zabanehs alleged that Bandali "harassed, threatened, and intimidated Nadim and Basima to the extent that they fear for their physical safety. [Bandali] also threatens both Plaintiffs' reputations in their social and business circles, including but not limited to their employer[s] and school where their child attends." They provided examples of Bandali's behavior by quoting excerpts from Bandali's e-mails in their petition. The Zabanehs alleged claims against Bandali for assault, intentional infliction of emotional distress, and defamation. They also sought sanctions against Bandali and sought injunctive relief, asking the trial court to restrain Bandali from harassing and threatening them.

The trial court signed a temporary restraining order on May 12, 2015, enjoining Bandali from (1) harassing the Zabanehs and their relatives in person, by mail/correspondence, text message, e-mail, facsimile, or telephone; (2) threatening the Zabanehs and their relatives; (3) "causing or contributing to any unlawful activity, at the residence of Basima and Nadim Zabaneh, their place of business, and school in which their child attends, or any properties owned by them, or to Plaintiffs, including but not limited to physical injury and besmirching their reputations;" (4) "being on or within five-hundred feet (500') of the residence of Basima and Nadim Zabaneh;" (5) "making and or directing any communications to Plaintiffs and their employees, agents, and representatives;" (5) "verbally and or

2

physically assaulting Plaintiffs and their agents, and representatives;" and (6) "making, filing, sending, or lodging malicious, bad faith, or false complaints regarding Plaintiffs or agents, and representatives."

Bandali filed his "Original Answer, Response in Opposition to Application for Temporary Injunction, Affirmative Defenses to Plaintiffs' Petition and Application for Temporary Injunction, and Request for Disclosure" on May 21, 2015. Bandali alleged that the Zabanehs sued him in retaliation for Bandali filing a suit on April 15, 2015, against Basima in Massachusetts for fraud, conversion, and other claims relating to the parents' estate. Bandali claimed that, "based on all the evidence submitted including the exhibits, there is not a single shred of evidence" that Bandali threatened the Zabanehs with imminent bodily harm or harassed them.

The trial court signed an "Extension of May 12, 2015 Temporary Restraining Order" on May 26, 2015. The trial court also signed a temporary injunction in favor of the Zabanehs on May 29, 2015, granting them the same relief as had been granted in the temporary restraining order.

The Zabanehs filed a traditional motion for summary judgment on September 4, 2015, on their claims for assault, intentional infliction of emotional distress, and defamation. In their motion, the Zabanehs sought a permanent injunction and sanctions against Bandali; they also sought attorney's fees.

Bandali filed a response to the Zabanehs' summary judgment motion on September 14, 2015. Bandali asserted, among other things, that summary judgment should not be granted because there is a genuine issue of material fact regarding (1) whether the Zabanehs should be awarded $35,000 in alleged attorney's fees given that the "billing affidavit is incomplete, does not add up to the claimed amount, includes charges not relevant to this case;" and (2) the Zabanehs' claim for assault because, "from all the evidence submitted including the exhibits,

3

there is not a single shred of evidence or statement by Defendant threatening them with imminent bodily harm."

The Zabanehs filed a reply to Bandali's response on October 5, 2015. The Zabanehs did not address Bandali's contention that their counsel's billing records are "incomplete," do "not add up," and include "charges not relevant to this case." The Zabanehs instead argued that they "attached extensive sworn affidavits and exhibits to their motion, which conclusively show that [Bandali] committed terroristic threats against them — a type of assault under the Texas Penal Code." The Zabanehs also stated that, "[s]ince there are no genuine issues of disputed fact as to [Bandali]'s assault against the [Zabanehs], under its chancery powers, the Court should now render a permanent injunction against [Bandali] to prevent future terroristic threats and continued harassment against [the Zabanehs]."

The trial court signed a "Final Judgment and Permanent Injunction" on October 15, 2015. The trial court awarded the Zabanehs all relief requested, including $35,000 in trial attorney's fees, attorney's fees for post-judgment and appellate proceedings, costs, and post-judgment interest.

Bandali timely filed an appeal.

ARGUMENT

## I.  Special Appearance

Bandali complains in his second issue that "[t]here was a scintilla of evidence and a genuine issue of material fact that Appel[l]ant was denied due process as the Trial Court failed to address Appellant's Special Appearance challenging jurisdiction." Bandali's argument consists of the following statement: "By not ruling on Appellant's Special Appearance and not setting a hearing on the Special Appearance, the Trial Court denied Appellant due process." Bandali's

4

statements quoted above do not comply with Texas Rule of Appellate Procedure 38.1(i) requiring that an appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i). Bandali's complaint is waived. *See id.*

Accordingly, we overrule Bandali's second issue.

## II. Attorney's Fees

Bandali contends in his first issue that a fact issue exists "as to whether or not the attorney for Appellees submitted documentation substantiating $35,000 of fees that were awarded in the summary judgment decision." Bandali contends that the "material fact that is in dispute is that Appellees['] billing affidavit is incomplete, does not add up to the claimed amount, includes charges not relevant to this case, and are disputed issues of fact surrounding Appellees['] costs associated with this Trail [sic] Court complaint." Bandali specifically points to Exhibit B-5, which contains billing records for May and June 2015; Exhibit B-5 was attached to the affidavit (Exhibit B) of the Zabanehs' counsel in support of the requested attorney's fees. Bandali states that "even Exhibit B-5 which provides a breakdown of attorney fees only adds up to $23,283.03."

The Zabanehs respond that this court should "affirm the judgment of the trial court because Appellees demonstrated that Appellees were entitled to its [sic] reasonable and necessary attorney's fees as a matter of law." In that regard, the Zabanehs contend that their trial counsel T. Michael Ballases "attached his own affidavit attesting to the reasonable and necessary attorney's fees incurred by Appellees in connection with the lawsuit." The Zabanehs further contend that Ballases also "attached May and June 2015 billing records to support his testimony[,] although the attorney's fees sought by Appellees also included several months of fees incurred after those dates (e.g. July, August, September)" for

5

additional work performed such as the preparation of the Zabanehs' summary judgment motion and response, and Ballases "acknowledged those fees in his affidavit."

The testimony of an interested witness generally does no more than raise a fact issue for the factfinder's determination. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)). An exception to this rule applies when "the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Id*. (quoting *Ragsdale*, 801 S.W.2d at 882).

The supreme court has admonished courts as follows with respect to attorney's fees: "[W]e do not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed." *Ragsdale*, 801 S.W.2d at 882. "For example, even though the evidence might be uncontradicted, if it is unreasonable, incredible, or its belief is questionable, then such evidence would only raise a fact issue to be determined by the trier of fact." *Id*. "In order for the court to award an amount of attorneys' fees as a matter of law, the evidence from an interested witness must not be contradicted by any other witness or attendant circumstances and the same must be clear, direct and positive, and free from contradiction, inaccuracies and circumstances tending to cast suspicion thereon." *Id*.

We agree with Bandali that the Zabanehs did not prove their entitlement to $35,000 in attorney's fees as a matter of law.

Here, the Zabanehs' proof of attorney's fees in the amount of $35,000 consists of their trial counsel's affidavit and attached Exhibit B-5; the affidavit and

6

exhibit were attached to the Zabanehs' traditional summary-judgment motion. In his affidavit, Ballases stated in pertinent part:

9. I am an attorney with the law firm of Hoover Slovacek, LLP . . . I am an attorney responsible for this file, and I am personally familiar with its contents and the actual time expended thereon. I have previously represented clients in connection with this type of claim. I am familiar with the attorneys' fees customarily charged by attorneys in Harris County, Texas for handling suits on these types of claims and am familiar with the attorneys' services required for the proper prosecution of suits founded upon similar claims.

10. Plaintiffs are entitled to recover its [sic] reasonable and necessary attorneys' fees incurred as a result of Defendant's actions, as stated herein, which caused the necessity of Plaintiffs' Traditional Motion for Summary Judgment.

11. It is the practice of the firm of Hoover Slovacek LLP to maintain time records and our fees are generally computed on an hourly basis or on a percentage of the recovery. My hourly rate in 2015 was $300.00. In addition, we consider the following factors:

   a. the novelty and difficulty of the questions involved and the skill requisite to perform the legal services properly;

   b. the likelihood that the acceptance of the particular employment would preclude other employment by the firm;

   c. the fee customarily charged in the locality for similar legal services;

   d. the dollar amount involved and the results obtained;

   e. the time limitations imposed by the client or the circumstances;

   f. the nature and length of the professional relationship with the client; and

   g. the experience, reputation and ability of the firm.

12. In connection with the prosecution of this suit, the following services have been rendered on behalf of Plaintiffs: review of file; multiple conferences and discussions with client and various witnesses; multiple communications with Defendant; review of various pleadings filed by Defendant; review of various e-mails,

7

letters, and communications made by Defendant; preparation of Original Petition and Temporary Restraining Order; attendance of Temporary Restraining Order hearing; preparation of Motion and Order to Extend Temporary Restraining Order; attendance of Temporary Injunction hearing; attendance of Defendant's Motion to Dissolve Plaintiff's Temporary Restraining Order, Prepare memorandums regarding the same, preparation of discovery responses, preparation of Motion for Show Cause and Contempt; review of the numerous and various documents, correspondence, and e-mails relating to the allegations made in Plaintiffs' Motion for Summary Judgment; preparation of Plaintiffs' Motion for Summary Judgment, along with supporting affidavits; and preparation and attendance at hearing on Plaintiffs' Motion for Summary Judgment. Each and all of the above described services . . . are reasonable and necessary to the proper resolution of this matter. . . . Plaintiff has expended $89,395.95 in attorneys' fees through August 31, 2014 dealing with Defendant's actions.

13. In my professional opinion, in view of the time to be expended on this matter, the services to be provided to Plaintiffs and other factors considered by me, a reasonable and necessary attorneys' fee for Plaintiffs would be $35,000,00. Exhibit B-4 encompasses true and correct copies of Hoover Slovacek LLP business records which describe the attorneys' fees expended on this matter on behalf of Plaintiffs. Each and all of the above described services including those legal services noted in Exhibit B-4 together with those services reasonably anticipated to be required, subsequent [to] the entry of Judgment, are reasonable and necessary to the proper resolution of this matter.

Although Ballases states in his affidavit that attached Exhibit B-4 contains the billing records for this case, the billing records, in fact, are contained in attached Exhibit B-5.[1]  The invoice for May 2015 contains descriptions of various work performed on specific dates in May.  The May invoice does not reflect whether Ballases or another attorney performed the work described for each date or how much time was spent on the work.  The invoice reflects that the amount for fees

---

[1] Ballases also stated in a footnote in his affidavit:  "Attached as Exhibit B-4 is a true and correct copy of Plaintiffs' attorney's fees incurred in connection to [sic] this matter."

billed for May was $17,121.25 plus $954.25 in expenses. There was an adjustment of $1,000 "per billing attorney" for a total amount of $17,075.50 billed.

The June 2015 invoice contains descriptions for work performed on specific dates in June and the time spent performing the work. It also specifies which work was performed by Ballases and billed at $300 per hour as compared to work that was performed by attorney Caroline P. Burgert, billed at $285 per hour, and attorney Caroline H. Russe, billed at $175 per hour. The invoice reflects that the amount for fees billed for June was $5,472.50 plus $735.03 in expenses for a total amount of $6,207.53.

The billing records attached to Ballases's affidavit establish that $21,593.75 in attorney's fees was billed. Neither Ballases's affidavit nor any portion of the record makes clear how the Zabanehs incurred an additional $13,406.25 in reasonable and necessary attorney's fees to support a $35,000 fee award. Nothing in the affidavit indicates that the attached billing records were sample invoices, and nothing in the affidavit accounts for or explains the difference between the $21,593.75 amount reflected in the billing records and the $35,000 in fees sought. The affidavit states: "Exhibit B-[5] encompasses true and correct copies of Hoover Slovacek LLP business records which describe the attorneys' fees expended on this matter on behalf of Plaintiffs," and "Attached as Exhibit B-[5] is a true and correct copy of Plaintiffs' attorney's fees incurred in connection to [sic] this matter." The affidavit does not provide objective criteria to substantiate the amount of attorney's fees requested.

Based on the record before us, we conclude that the Zabanehs have not established as a matter of law that they are entitled to $35,000 in attorney's fees in this case. Ballases's testimony is not free from "contradiction, inaccuracies, and circumstances tending to cast suspicion thereon," as demonstrated by Ballases's

affidavit and the incorporated billing records. *See Ragsdale*, 801 S.W.2d at 882. Ballases's testimony therefore does not establish as a matter of law that the Zabanehs are entitled to $35,000 in attorney's fees. *See id*.; *see also Am. Baler Co. v. SRS Sys., Inc.*, 748 S.W.2d 243, 250 (Tex. App.—Houston [1st Dist.] 1988, writ denied) ("We agree with appellant's fourth ground that the evidence is insufficient to support an award of $70,000, because the only evidence offered was testimony by appellee's attorney, Daniel Goforth, based on a computer print-out showing charges of $51,507 attributed to this suit."); Scott A. Brister, *Proof of Attorney's Fees in Texas*, 24 St. Mary's L.J. 313, 330-31 (1993) ("Billing and time records may be introduced as business records in support of an attorney's fees claim. Yet, there are several good reasons for not introducing these records. In the first place, the effort is unnecessary; billing records do not have to be introduced to support a fee recovery. An expert witness may testify from a review or summary of the records without introducing the records at trial. . . . Further, if the bills are admitted, the judgment may be limited to the amount indicated by the bills unless any difference is explained.") (internal citations omitted).

We reject Bandali's argument that some of the charges contained in the billing records are "not relevant to this case." Bandali points to no evidence to support his assertion that the billing records include "charges not relevant to this case."

Accordingly, we sustain Bandali's first issue with regard to the amount of attorney's fees the Zabanehs are entitled to recover in this case. We will reverse and remand this case for further proceedings consistent with this opinion.

## III. Continuance

Bandali contends in his third issue that "[t]here was a scintilla of evidence and a genuine issue of material fact that [the] Trial Court failed to grant Appellant

a continuance on the hearing for summary judgment despite the submission of substantive reasons requesting a continuance."

Bandali's argument consists of the following statement: "Here when reviewing the entire record, the fact that the Trial Court never heard the Special Appearance Motion of Appellant, never considered the reasons for denying the continuance in its ruling, and most importantly granting Appel[l]ees['] entire attorney['s] fees of $35,000 without any sound basis for doing so as explained in this brief is grounds for showing a clear abuse of discretion." Bandali does not cite to any evidence in the record to support his argument.

Because Bandali makes no clear and concise argument to support his contentions and does not provide citations to the record, Bandali's statements do not comply with Texas Rule of Appellate Procedure 38.1(i) requiring that an appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i). Bandali's complaint is waived. *See id*.

Accordingly, we overrule Bandali's third issue.

## IV. Summary Judgment

Bandali complains in his fourth issue that the trial court erroneously granted summary judgment in favor of the Zabanehs because, "[f]rom all the evidence submitted[,] there is not a single shred of evidence or statement by Appellant threatening Appellees with imminent bodily harm." Bandali contends that "there is a dispute of material facts [sic] regarding the alleged threats that exists [sic] making summary judgment inappropriate."

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we

11

examine the record in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Cantey Hanger, LLP*, 467 S.W.3d at 481.

Bandali appears to challenge only the grant of summary judgment with regard to the Zabanehs' assault claim. But, Bandali does not identify the fact issues he claims exist with respect to the assault claim. He does not explain why he believes the trial court erred in granting summary judgment on the assault claim or why the evidence in the summary judgment record does not establish threats sufficient to support judgment on the assault claim as a matter of law. He does not address the summary judgment evidence at all. Because Bandali makes no clear and concise argument to support the contentions quoted above, nor does he provide appropriate citations to pertinent authorities or the record, Bandali's statements do not comply with Texas Rule of Appellate Procedure 38.1(i) requiring that an appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i). Bandali's complaint is waived. *See id*.

Accordingly, we overrule Bandali's fourth issue.

## CONCLUSION

We reverse the portion of the trial court's judgment awarding the Zabanehs $35,000 in trial attorney's fees and remand this case for further proceedings consistent with this opinion.  We affirm the trial court's judgment in all other respects.


/s/     William J. Boyce
Justice


Panel consists of Chief Justice Frost and Justices Boyce and Christopher.

13